Isaias LARA, Appellant,

v.

The STATE of Texas, Appellee.

No. 43511.

Court of Criminal Appeals of Texas.

March 17, 1971.

Rehearing Denied May 19, 1971.

Second Rehearing Denied June 29, 1971.

Harry A. Nass, Jr., T. P. Henley, San Antonio, for appellant.

Ted Butler, Dist. Atty., Charles Butts and Sparta Bitsis, Asst. Dist. Attys., San Antonio, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for unlawful possession of a narcotic drug, to-wit: heroin; the punishment was assessed by a jury at life.

The sole ground of error urged by appellant is the legality of the arrest and the search incident thereto.

The state's evidence reflects that at approximately 4:30 P.M., on November 4, 1968, Officer P. R. Gonzales, a detective with the San Antonio Police, an officer with eleven years of experience, was patrolling in the vicinity of the five hundred block of Matamoros Street, a location known to him as frequented by dope addicts, he observed a parked car with the motor running. Then he noticed "a suspicious person there coming from the area of some vacant shacks."

"Q. Describe the condition of the shacks.

"A. Well, it's a—it's—

"Q. Without mentioning the contents or anything like that.

"A. It's just a vacant small houses, vacant, like rows of houses, little rooms—one-room type little apartments all together.

"Q. Were they suitable for habitation?

"A. No, sir.

"Q. Were they generally run down?

"A. Yes, sir.

"Q. And when you saw this individual outside the houses then what did you do, without saying what you said? What did you do?

"A. I stopped him and I asked for his identification, see what he was doing there, and after I talked to him, he didn't give me any. He said he didn't—he was going somewhere.

"Q. Don't go into what he said.

"A. Okay, sir.

"Q. After you had the conversation with the individual, then did you go back to your vehicle?

"A. Yes, sir. I went back to my vehicle because I noticed some suspicious persons—another party just to the —just north from where I was in the street.

"Q. What did you do when you got back in your vehicle?

"A. I called for assistance, * * *."

Officer Gonzales then testified that Officer Johnny Teran arrived in about five minutes and "We started walking towards these shacks."

"Q. Is this Matamoros Street?

"A. From Matamoros, right, the five hundred block, and there was one subject that we could see, and we started like getting over there real fast, or running or walking, I don't recall; and this man yelled something, you know. I didn't hear exactly what he said. He threw something that he had and he started running. And as soon as we got to this shack there was, we noticed, about five or six persons running in different directions.

"Q. Do you know the defendant in this case Isaias Lara?

"A. Yes, I do."

He further testified that one of the "subjects" that ran was Isaias Lara, the appellant; that Officer Teran apprehended the appellant; that in his opinion the appellant was under the influence of narcotics. A search of appellant revealed a capsule of heroin.

Officer Teran testified that he was dispatched to the scene where he met Officer Gonzales, and as they started walking

toward the houses a "lookout" yelled something and about 5 or 6 "subjects" ran from one of the abandoned houses. The officers gave chase and he (Officer Teran) caught the appellant and handcuffed him to a stop sign, quickly searched him and found a pocket knife, then ran to apprehend others. After he and Officer Gonzales returned with other "subjects" they were all read a legal warning and searched. The heroin heretofore referred to was found on appellant. Officer Teran also testified that, in his opinion, appellant was under the influence of narcotics.

The house that the appellant and his companions ran from was known to the officers as a place used by "dope addicts." Officer Teran testified on appellant's pretrial motion to suppress evidence, that his suspicions were aroused, " * * * like I said, we have made calls here before. We had received information from other people, reliable people that they had seen lot of subjects, dope addicts going to that location and into the shacks and where they had gone in there and have used dope; and on previous occasions, I have gone there and we have arrested—I have arrested other subjects from this location. And while I have looked through these shacks I have seen all the evidence of the use of heroin. I have seen the burnt bottle caps. I found several empty boxes of those gelatin capsules, the boxes and the empty capsules and soda water bottles with water. On occasions I found just, I mean, old needles: all indications that they are using this location."

We hold that under all the circumstances herein observed by the officers and the facts known by them, they had probable cause to be suspicious and the arrest was authorized under Art. 14.03 Vernon's Ann.C.C.P., which provides:

"Any peace officer may arrest, without warrant, persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten, or are about to commit some offense against the laws."

The arrest made under the provisions of Art. 14.03, supra, would authorize a search of appellant's person incident thereto and the fruits thereof were admissible in evidence. Alaniz v. State, Tex.Cr. App., 458 S.W.2d 813; Baity v. State, Tex. Cr.App., 455 S.W.2d 305; Carter v. State, Tex.Cr.App., 445 S.W.2d 747; Sanchez v. State, Tex.Cr.App., 438 S.W.2d 563; Laube v. State, Tex.Cr.App., 417 S.W.2d 288; Chambler v. State, Tex.Cr.App., 416 S.W.2d 826. Appellant's complaint of the second search at the scene is without merit.

There being no reversible error, the judgment is affirmed.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

ONION, Presiding Judge.

On rehearing appellant contends we missed the point he sought to make on original submission. He points out, and correctly so, that the capsule of heroin was recovered as a result of the second search of his person. He contends that our original opinion left the impression it was recovered when he was first apprehended, and that the second search was not reasonable because it was not made contemporaneously with the arrest; that it was at another time and place.

As the original opinion reflects, the appellant was one of several men who fled from abandoned houses upon the approach of the officers. After he was apprehended by Officer Teran he was handcuffed to a stop sign. A cursory search of his person revealed a pocket knife. Officer Teran then left to attempt to apprehend the other fleeing subjects. He and Officer Gonzales each returned with another subject. The appellant and these two were placed in a patrol car and returned to the 500 block of Matamoros Street from which they had just fled. They were all given "Miranda"

warnings. Both officers testified at the time the appellant, in their opinion, was under the influence of a narcotic. During the second search of appellant's person at this point a capsule of what was later shown to be heroin fell from his clothing. Officer Teran was unable under the circumstances, to make more than a cursory search when the appellant was first apprehended, unless he had been willing to allow the other subjects to flee unapprehended. The second search was within a short distance and within a short time after the arrest and was substantially contemporaneous therewith. In our opinion the arrest, the limited search, the return of the appellant to the scene from which he fled, the warnings and subsequent search were all a part of one continuous happening. Cf. Taylor v. State, Tex.Cr.App., 421 S.W.2d 403, 408, cert. den. 393 U.S. 916, 89 S.Ct. 241, 21 L. Ed.2d 201.

■ We further observe that the officers made a bona fide arrest of the appellant under the provisions of Article 14.03, V.A.C.C.P.[1] Thereupon they discovered he was under the influence of a narcotic drug, a felony. See Article 725c, V.A.P.C. Under such circumstances Article 14.01, V.A. C.C.P.[2] would come into play authorizing appellant's arrest for that offense and authorizing a search incident to that arrest. The subsequent search would not necessarily be tied to Article 14.03, supra, but rather to the violation later discovered. See Taylor v. State, supra, at p. 407; Gutierrez v. State, Tex.Cr.App., 422 S.W.2d 467; Denham v. State, Tex.Cr.App., 428 S.W.2d 814. Thus another reason appears to justify the second or subsequent search.

1. Article 14.03, V.A.C.C.P., provides:
"Any peace officer may arrest, without warrant, persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten, or are about to commit some offense against the laws."

2. Article 14.01, V.A.C.C.P., provides:
"(a) A peace officer or any other person, may, without a warrant, arrest an

Remaining convinced that this cause was properly disposed of on original submission, the appellant's motion for rehearing is overruled.

offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony or an offense against the public peace.
"(b) A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."