**David RUSHING, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 47092.

Court of Criminal Appeals of Texas.

Oct. 17, 1973.

Rehearing Denied Nov. 14, 1973.

**668**

Philip R. Lane, San Angelo, for appellant.

Royal Hart, Dist. Atty., Wm. J. Stroman, Asst. Dist. Atty., San Angelo, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This an appeal from an order revoking probation. Appellant was convicted of the offense of sale of phenmetrazine, a dangerous drug. Punishment was assessed at three years, probated. Subsequently, the State made application to revoke that probation.

In the motion to revoke, the State alleged that (1) appellant had failed to pay his probationary fees and costs incurred in connection with his probation and (2) that appellant violated his probation by possessing marihuana on or about the 22nd day of September, 1972. The State offered absolutely no evidence of a violation of the first allegation. Therefore, if appellant's probation was properly revoked, that revocation must stand on the charge of marihuana possession.

Appellant contends that the trial court abused its discretion by revoking his probation based on evidence seized as the result of an illegal arrest and search on the ground that the officers did not have sufficient probable cause to arrest him without a warrant.

The evidence shows that Officer Walter Pierce of the San Angelo Police Department received a tip from an informer and arrested appellant. Pierce testified that the informer had told him that he had seen appellant that evening with marihuana and that he and a companion, Richard Lawler, would be in a two-tone green Ford pickup. When he found appellant at approximately 11:45 p. m., he was with Lawler in a two-tone green Ford pickup, parked in the parking lot of the Radio Shack business establishment and that the business was closed at that hour of the evening. Officer Pierce also testified that earlier in the evening he had answered a disturbance complaint at the Der Wiener Schnitzel Cafe and that the persons reported causing the disturbance were in a two-tone green pickup.

An examination of the possible theories upon which the search might be justified is now in order.

### I.

#### Article 14.03

The record wholly fails to support any reliance upon this "suspicious persons" article as a basis for the arrest and search of appellant.

When arrested, the appellant and his companion were parked in a pickup truck in the parking lot of the Radio Shack. The time was approximately 11:45 p. m. Neither of the two arresting officers testified to the effect that their suspicions were aroused by the truck being parked at that place at that time of night. To the contrary, all the evidence in the record indicates that this lot was used by the young people of the town as a gathering place at

night. One of the arresting officers, upon questioning by the *prosecutor,* stated:

"Q Had you observed other cars park on the *r*adio *s*hack parking lot after the establishment was closed?

"A Yes, sir, several times.

"Q Is this parking lot generally used by young people at night for just parking and not connected with the business of the *r*adio *s*hack?

"A Yes, sir."

Another witness testified that "a lot of kids park there after the *r*adio *s*hack is closed" and that "this is the kind of place where kids generally park." The record does not reflect any testimony whatsoever that the arrest was predicated upon a "suspicious persons" basis. Rather, the officers made it quite clear, as will be shown later, that they specifically sought out and searched *appellant's person* and his companion because of the tip that they had received. Appellant and his companion were both known in the town—in fact, both arresting officers testified that they knew that appellant was a resident of the town and not just passing through.

■ Even assuming, arguendo, that the officers' questioning of appellant could be justified under 14.03, which it obviously cannot under these circumstances, the subsequent search fails to measure up to legal standards. Certainly, this Court has recognized the legality of searches *incident* to arrests under Article 14.03, Vernon's Ann. C.C.P.; e. g., Crawford v. State, 478 S.W. 2d 456 (Tex.Cr.App.1972); Lara v. State, 469 S.W.2d 177 (Tex.Cr.App.1971), cert.

denied, 404 U.S. 1040, 92 S.Ct. 724, 30 L. Ed.2d 732 (1972). However, this Court has never held that 14.03 gives police officers an unlimited right to search.

The facts relating to the search in the present case are these: appellant and his companion were located on the parking lot of the Radio Shack; the officers conducted a search of the two men; marihuana was found in appellant's *right boot.* There was no testimony that this was found as a result of a search incident to arrest, such as perhaps a weapons search.[1] Instead, all testimony shows that the two men were detained for the very purpose of searching their persons for marihuana.

Therefore, the search must be justified, if at all, under some basis other than Article 14.03, V.A.C.C.P.

II.

*No Search Warrant*

No warrant was obtained before the search occurred. There was approximately a two-hour lapse between the time the "tip" was received until the time that appellant was arrested and searched. One of the two arresting officers testified that it "wasn't up to him to get the warrant." The other officer stated that no attempt was made to obtain a warrant. As previously stated, both officers testified that they knew the appellant and knew that he was a resident of the town and not just passing through. One of these officers did state that ordinarily it would take him about one hour to obtain a warrant.

---

1. One of the arresting officers testified as follows regarding Richard Lawler, appellant's companion at the time of arrest:

"Q You testified that when you went up to the pickup you told Richard Lawler you were told he had marihuana?

"A I said I had information he had marihuana in his vehicle.

"Q Is that why you searched him personally?

"A Yes, sir.

"Q Because he had it, and you were told he had it in his vehicle.

"A *Well, also for weapons.* (Emphasis added)

"Q Were you in fear of your life?

"A You can't ever tell."

The record is devoid of any testimony that the search of appellant was even *also* for weapons.

## III.

### Probable Cause for the Warrantless Arrest and Search

Was there sufficient probable cause to make the arrest and search, based upon the informer's tip and the officers' knowledge of appellant's reputation? Also, was there sufficient corroboration of the informer's tip so as to justify the arrest and search?

### (1)

### The "Tip"

The arresting officer testified that the informant had *never* given any information before and was completely unknown prior to this occasion. Nothing about him or his character was known. His occupation was not known. His reputation was unknown; one of the officers stated that the informant could have been convicted of murder the day before for all he knew. Thus, the informant's reliability and credibility had never been tested. The standards applicable to the factual basis supporting an officer's probable cause assessment at the time of a challenged warrantless arrest and search are at least as stringent as the standards applied with respect to a magistrate's assessment as a prelude to issuing an arrest or search warrant. Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

■ Appellant recognizes, as do we, that hearsay information, insufficient to constitute probable cause under Aguilar v. Texas,[2] may nevertheless become sufficient if adequately corroborated by independent observation of the arresting officer. Whiteley v. Warden, supra, citing Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) and Spinelli v. United States,

393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). However, the information gained by observation must in some sense be corroborative of the informer's tip that, in the present case, *the appellant possessed marihuana.* Cole v. State, 484 S.W.2d 779 (Tex.Cr.App.1972).

### (2)

### The Corroboration of the Tip

■ The unidentified informant told the officers that appellant had marihuana in his possession and that he and a named companion were in a certain color and make pickup. The record does not reflect that the informer named a location where the appellant might be found in possession of that marihuana. The ultimate issue to be decided at this point is whether or not the officers' seeing appellant and his companion, some two hours later, parked in a parking lot, in a vehicle which matched the informant's description, satisfies the test of sufficient corroboration. We conclude that it clearly does not.

We refer the reader to Cole v. State, supra. In that case, a previously unproven informant told police officers that the defendant had committed a certain robbery with a shotgun and that he had a Buick automobile. In addition, the informant recited a residential address where the defendant would be found, and the fact that he was to leave immediately and participate in another robbery. The officers acted upon this information, proceeded to the designated address, and found the accused, along with his shotgun and shells. A Buick automobile was found outside this location.

This Court concluded that these facts were not sufficiently corroborative of the tip to justify the warrantless intrusion.[3]

---

2. 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

3. Though this Court found, in Cole, that the search was illegal, it was held to be harmless error, in light of the eyewitness testimony of three persons. In the present case, the illegal search can in no way be labeled harmless, as it is the only basis for revoking the appellant's probation.

As in Cole, where it was held that the facts were not corroborative of the tip *that appellant had committed the robbery*, it is likewise true that in the present case, preceding the illegal search, there was absolutely *no* corroboration of the tip that appellant *had marihuana in his possession.* All that was corroborated was the fact that on this evening appellant would be found somewhere in the town with a named companion in a certain vehicle. The informer had not stated that a drug transaction would take place on this parking lot or that it would take place at a certain time; neither did he relate that the two men were planning to use this particular vehicle to deliver or transport the marihuana. Further, the record is silent as to the circumstances surrounding the informant's knowledge that appellant possessed marihuana.[4]

### (3)

### *The Officers' Knowledge of Appellant's Reputation*

Using the case of United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), one might argue that the reputation of appellant and his companion should be used to test the reliability of the informant's tip. However, the only knowledge of appellant's reputation which Officer Pierce related was that he knew that he was on probation for a drug violation. (There is no indication from the record that this probated sentence of which the officer knew was any one other than the very one which is now being revoked.)

As for the reputation of appellant's companion, Lawler, the record reflects the following:

"Q Ever known of him [Lawler] to attack a police officer?

"A Yes, sir. I believe he was charged with aggravated assault, on a police officer.

"Q Did you know if it was a police officer?

"A I believe so, yes, sir.

"Q Was that prior to this case?

"A Yes, sir.

"Q You say you believe so; you don't know so, is that correct?

"A *I am pretty sure.*"[5] (Emphasis added)

Therefore, we are left with the following as constituting "knowledge" of appellant's and his companion's reputation: the fact that both officers knew that appellant was on probation, and the fact that one officer "believed" that appellant's companion had, sometime in the past, commit-

4. Though the decision is, of course, not binding on this Court, we would refer the reader to a very recent 5th Circuit case, as an example of what that tribunal found to be "sufficient corroboration" of an informant's tip. The case is United States v. Romano, 482 F.2d 1183 (5th Cir., 8/6/73). There, a used car salesman telephoned his wife that he had been taken captive and his abductors had taken him in a green Firebird to a certain local motel. The wife in turn notified her attorney, who notified a police detective, whose report conveyed the information to the officers who made the arrest the next day.

The 5th Circuit found that although the "tip" amounted to a triple hearsay, the details of the attorney's report received sufficient corroboration before the arrest so that probable cause was established. The case is clearly distinguishable from the cause now before our Court. In Romano, before the arrest, the details of the attorney's report received the following corroboration: (1) police independently verified that the car sales-man was in the company of men driving a green Firebird, (2) that the Firebird was parked outside the designated motel, (3) and that the FBI suspected the salesman of involvement in a stolen car transaction. The Court further noted that the "tip" came from a credible source, the attorney, and that it appeared that there was insufficient time for the arresting officer to get a warrant. There was clearly corroboration of the tip that the salesman had been abducted. In our case, we have no corroboration of the tip that appellant had marihuana.

5. Even if true that Lawler had committed this offense, then such knowledge on the officer's part would furnish him with cause to call for assistance, but obviously it would not assist the officer in "assessing the reliability of an informant's tip" that appellant or Lawler possessed marihuana. United States v. Harris, supra. Also, the record is devoid of testimony that the second officer was called to assist because of this knowledge on Pierce's part.

ted the offense of aggravated assault on a police officer.

The rationale of United States v. Harris, supra, will not boost this information to the level of probable cause. In Harris, the reputation which was related was that the defendant was known for over four years as a trafficker of illegal liquor (the same offense involved in the case). Further, in the four years preceding the search in question, a local constable had located a sizeable amount of illicit whiskey in an abandoned house under the defendant's control. The Harris Court referred to the policeman's knowledge of such a reputation as "probative information" which might be used to further test the reliability of the informant's tip.

In the present case, the reputation known cannot be classified as probative information which would add credibility or reliability to the tip. Certainly, the fact that Lawler *might* have assaulted a police officer in the past adds no weight to the tip that he and appellant now possessed marihuana.

Arguably, however, it might be advanced that the fact that appellant was known to be on probation for a drug violation would add believability to a tip that he now possessed marihuana. We concede that if this reputation were bolstered by numerous other factors, such as were present in Harris, then it would be relevant as *one element* helping to produce probable cause. Standing by itself, it is totally insufficient, and even the Harris Court did not rely heavily upon the "reputation" element; in fact, this factor played a very minor role in that case.[6]

## IV.

### *"The Disturbance" as Probable Cause*

The facts surrounding this "disturbance" are these: a woman named Molly Smith called a police officer to the "Der Wiener Schnitzel" in San Angelo because appellant and his companion were "pestering" her. She stated that by this, they were being "vulgar" and "aggressive." A police officer arrived, Smith pointed out the two men, and appellant and his companion drove off. Smith then told the officer that she was sorry for everything, that "it wasn't that big of a deal." As the two men drove off, the police officer stated that "they must have marihuana or something, they are in such a hurry."[7] Smith replied that "they probably do because of the way that they are acting."[8] (We have no way of telling whether Smith's reply was made in jest or not.) Mere acquiescence to the officer's statement cannot, of course, constitute probable cause for a warrantless arrest and search.

Officer Pierce testified that after he checked out the "disturbance" call he "went on patrol" and that there was no further follow-up on the incident. He testified that it was approximately an hour and forty-five minutes later that he arrested appellant and Lawler.

It is obvious that when the two officers arrested appellant, they had specifically sought him out because of the informant's tip. Officer Magee testified that he did not go after appellant after the "disturbance call" since he was a narcotics specialist and did not respond to such calls.

6. The dissent in Harris refused to accept this "reputation as bolstering probable cause" theory. Four members of the Court stated: "Surely, it cannot seriously be suggested that, once an individual has been convicted of bootlegging, any anonymous phone caller who states he has just personally witnessed another illicit sale (up to four years later) by that individual provides federal agents with probable cause to search the suspect's home. I can only conclude that this argument is a makeweight, intended to avoid the necessity of calling for an outright overruling of Spinel-li." [Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).]

7. Smith stated that when the appellant and his companion left, they did not "burn out" or "anything like that," nor is there any other indication that any kind of traffic violation occurred upon which this revocation might be predicated.

8. Smith further stated that when the officer made his statement, she was not aware whether he was talking to her or to the man with him.

He further testified that after hearing of the tip he "got concerned with marihuana" and then began to search for the appellant.

Even though the officers did not attempt to use the "disturbance" as probable cause, it is clear that no violation of the law is shown from the record and such incident would not serve in any event to justify the resulting search and arrest.

## CONCLUSION

The arrest and search were clearly illegal. The only evidence upon which the revocation could proceed was obtained as a result of this search. Therefore, an abuse of discretion is presented in this cause.

The judgment is reversed and the cause remanded.

MORRISON and DOUGLAS, JJ., concur in the result.