**Cedric James BUCHANAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–05–00018–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Sept. 6, 2005.

Decided Sept. 30, 2005.

Rehearing Overruled Oct. 25, 2005.

Mark A. Rubal, Rubal Law Firm, Houston, for appellant.

Charles A. Rosenthal, Jr., Harris County Dist. Atty., Peyton Z. Peebles, III, Asst. Dist. Atty., Houston, for state.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

Cedric James Buchanan was convicted of aggravated robbery. The jury found that he had twice been previously convicted and assessed punishment at thirty

years' confinement. Buchanan appeals the trial court's denial of his motion to suppress evidence. Buchanan contends it was error for the trial court to deny the motion because his arrest and the subsequent search violated both the United States and Texas Constitutions as well as provisions of the Texas Code of Criminal Procedure. We reverse and remand for a new trial.

## Factual Background

Buchanan was accused of using a knife during a robbery committed at a Sears department store. At trial, he admitted he had stolen merchandise from the store, but denied using a knife during the act.

Police officers received information that Buchanan was staying at a dilapidated garage apartment adjacent to a fire-damaged house. The day after locating the apartment, officers entered it without a warrant and found Buchanan asleep. The officers arrested Buchanan and seized a backpack that was next to him. Upon searching the backpack, the officers found a steak knife. At trial, Buchanan filed a motion to suppress the evidence obtained during the search. The trial court denied the motion and allowed evidence that Buchanan was in possession of a knife at the time of his arrest.

## Issues

Buchanan contends on appeal that the trial court erred by refusing to suppress the evidence obtained during the search of his backpack. He asserts that the initial entry and search of the residence were in violation of both the United States and Texas Constitutions, and additionally that his arrest without a warrant was in violation of the Fourth Amendment to the United States Constitution, Article I, Section 9 of the Texas Constitution, as well as Chapter 14 of the Texas Code of Criminal Procedure.

## Standard of Review

We review the trial court's ruling whether to admit or exclude evidence under an abuse of discretion standard. *Wilks v. State*, 983 S.W.2d 863, 866 (Tex. App.-Corpus Christi 1998, no pet.). In conducting this review, the court gives almost total deference to a trial court's determination of historical facts and application of law to fact questions that turn on credibility and demeanor, then reviews de novo application of law to fact questions that do not turn on credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). In other words, we give almost total deference to the trial court in determining what the actual facts are, and then review de novo whether those facts are sufficient to provide legal justification for obtaining the complained-of evidence. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex.Crim.App.2001). Where the trial court does not make explicit findings of historical facts, we review the evidence in the light most favorable to the trial court's ruling. *Walter v. State*, 28 S.W.3d 538, 540 (Tex.Crim.App.2000). In this case, the trial court did not make explicit findings of fact. Therefore, the evidence must be reviewed in the light most favorable to the trial court's ruling.

## Unlawful Search

The purpose of both the Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution "is to safeguard an individual's legitimate expectation of privacy from unreasonable governmental intrusions." *Richardson v. State*, 865 S.W.2d 944, 948 (Tex.Crim.App.1993). Under both constitutional provisions, an accused has standing to assert a claim challenging the admission of evidence obtained by a governmental intrusion only if he or she had a legitimate expectation of privacy in

the place invaded. *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Richardson,* 865 S.W.2d at 948–49; *Fuller v. State,* 829 S.W.2d 191, 202 (Tex.Crim.App.1992); *see Granados v. State,* 85 S.W.3d 217, 223 (Tex.Crim.App. 2002).

■■■ Further, the accused, because he or she has greater access to the relevant evidence, has the burden of proving facts establishing a legitimate expectation of privacy. *Calloway v. State,* 743 S.W.2d 645, 650 (Tex.Crim.App.1988). To carry this burden, the accused must normally prove: (a) that by his or her conduct, the accused exhibited an actual subjective expectation of privacy, i.e., a genuine intention to preserve something as private; and (b) that circumstances existed under which society was prepared to recognize the accused's subjective expectation as objectively reasonable. *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979); *Richardson,* 865 S.W.2d at 948–49.

■■ The following are relevant to the court's determination of whether the accused's subjective expectation was one that society was prepared to recognize as objectively reasonable: (1) whether the accused had a property or possessory interest in the place invaded; (2) whether he or she was legitimately in the place invaded; (3) whether he or she had complete dominion or control and the right to exclude others; (4) whether, before the intrusion, he or she took normal precautions customarily taken by those seeking privacy; (5) whether he or she put the place to some private use; and (6) whether his or her claim of privacy is consistent with historical notions of privacy. *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App.1996); *Calloway,* 743 S.W.2d at 651.

■■ At the suppression hearing, Gary Young, the arresting officer, testified he found Buchanan asleep on a mattress on the floor of a dilapidated garage apartment, which was adjacent to a house with extensive fire damage. The surrounding yard was unkempt. The door to the apartment was off the hinges and supported only by a metal pole extending from the inside of the door to the garage floor. The apartment appeared to have no running water or electricity. The apartment did not contain any clothes or other personal effects that appeared to belong to Buchanan. Buchanan testified he paid "[a] couple of bucks here and there when I got ahold of it" to the "overseer" of the property known only to him as "Pops." He also testified he did not know who owned the apartment. Buchanan testified he never reported this apartment as his address to his parole officer, did not pay the utilities and assumed "Pops" did, and did not receive mail at this address. He did testify that the front door was not off its hinges and was shut.

■■ A trial court's ruling on a motion to suppress is within the sound discretion of the court. In such a hearing, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Villarreal,* 935 S.W.2d at 138. Therefore, an appellate court must view the record evidence and all reasonable inferences therefrom in the light most favorable to the trial court's ruling. *Id.* Buchanan never testified that he was required to pay rent, only that he paid "[a] couple of bucks" to an "overseer" and did not know who owned the apartment. This explanation apparently was not credible to the trial court. Since Buchanan did not know the identity of the owner of the apartment and had no documentation to support his claim of possession, a reasonable conclusion is that his presence on the premises was not legitimate. *See Davis v. State,* 119 S.W.3d 359,

367 (Tex.App.-Waco 2003, pet. ref'd) (defendant spent two or three nights a week at the house searched, did not know who owned it, testified he had keys to the house, owned a mattress in the house, had no paperwork to support his claim and acknowledged he lived at times with his mother-no legitimate expectation of privacy found). If Buchanan did not have permission from the owner or the owner's agent, he did not have the right to control the property. *Id.* While the metal bar supporting the door may have provided some measure of privacy, it would not be considered a normal or customary precaution. Viewing this evidence in the light most favorable to the trial court's ruling, we conclude (1) Buchanan did not have a property or possessory interest in the apartment, (2) Buchanan was not legitimately on the premises, (3) Buchanan did not have complete control over the property or the right to exclude others, and (4) Buchanan did not take normal and customary precautions to ensure his privacy.

In effect, Buchanan was a mere trespasser within the apartment, and historically courts have not extended the privacy guarantees of the United States or Texas Constitutions to trespassers. *See Granados,* 85 S.W.3d at 224–26. Therefore, Buchanan did not prove that he had a reasonable expectation of privacy and cannot challenge the search of the premises under either the United States or Texas Constitutions. We further hold that Buchanan's subjective expectation of privacy was not one that society is prepared to recognize as objectively reasonable.

**Unlawful Arrest**

*Constitutional Claim.*

Buchanan also contends on appeal that his arrest was in violation of the Fourth Amendment to the United States Constitution as well as Article I, Section 9 of the Texas Constitution. Neither the United States Constitution, nor Article I, Section 9 contains a requirement that an arrest be authorized by an arrest warrant. An arrest that is otherwise reasonable will not be found to be in violation of either provision because it was not authorized by an arrest warrant. *Hulit v. State,* 982 S.W.2d 431, 436 (Tex.Crim.App.1998).

Reviewing the evidence in the light most favorable to the trial court's decision, the arrest of Buchanan was reasonable. The police officers had a physical description of a robbery suspect and information as to the whereabouts of that suspect. Buchanan was found at the location that had been given to the officers and matched the description they had received. Therefore, the officers had probable cause to believe that Buchanan had committed a robbery and acted reasonably in arresting him. Because Buchanan's arrest was reasonable, it neither violated the Fourth Amendment to the United States Constitution nor Article I, Section 9 of the Texas Constitution. This point of error is overruled.

*Statutory Claim*

In his final point of error, Buchanan contends his arrest violated Chapter 14 of the Texas Code of Criminal Procedure. We agree.

The police officers arrested Buchanan without an arrest warrant. To arrest an individual, Texas statutory law requires an arrest warrant unless one of several exceptions to the general rule is present.

The State first contends Buchanan failed to raise this issue in the trial court, thereby waiving any possible error. We find that Buchanan did raise this issue in the trial court and that it is properly before us on appeal.

In order to preserve an issue for appeal, an objection is required to inform the trial court of the basis of the

objection and afford the court the opportunity to rule on the objection. *Purtell v. State*, 761 S.W.2d 360, 365 (Tex.Crim.App. 1988). Even a general or imprecise objection will be sufficient to preserve error for appeal where the grounds of the objection are obvious to the court and opposing counsel. *Eisenhauer v. State*, 754 S.W.2d 159 (Tex.Crim.App.1988); *Tribble v. State*, 792 S.W.2d 280, 282 (Tex.App.-Houston [1st Dist.] 1990, no pet.).

In his written motion to suppress, Buchanan stated, "The Defendant would show that he was arrested without a valid warrant. . . ." The written motion further states that the admission of any illegally seized evidence would violate Buchanan's statutory rights under Article 38.23 of the Texas Code of Criminal Procedure.

At the hearing on the motion to suppress, Buchanan's counsel argued, "It's undisputed that the officers did not have a search warrant, did not have any sort of arrest warrant." Further, while not using the specific words, "Chapter 14 of the Texas Code of Criminal Procedure," Buchanan's counsel used the exact language of that chapter during his closing argument when he said, "[T]hey have to have either *consent*, which they didn't have, or emergency *exigent circumstances*, which they didn't have. . . ." (Emphasis added.) *See* Tex.Code Crim. Proc. Ann. art. 14.05 (Vernon 2005).

Although Buchanan did not specifically mention Chapter 14, he clearly objected to Buchanan's arrest without an arrest warrant while using language contained within the statute. While the motion and argument may not have been precise, they were sufficient to alert the trial court and opposing counsel that Buchanan sought to exclude evidence which was obtained as a result of a warrantless and unlawful arrest under State statutory law. *See Hill v.*

*State*, 641 S.W.2d 543 (Tex.Crim.App. 1982).

■ Once a defendant raises the issue of a warrantless arrest, the State carries the burden of establishing the validity of that arrest. *Stull v. State*, 772 S.W.2d 449, 453 (Tex.Crim.App.1989). The State failed to produce any evidence at the hearing on the motion to suppress that would have justified arresting Buchanan without a warrant. For this reason, and the reasons set forth below, the motion to suppress should have been granted.

■ The State contends on appeal that the officers were justified in making the warrantless arrest under the so-called "suspicious place" exception.

Under this exception, an officer may make an arrest without an arrest warrant if the person to be arrested is found: (1) in a suspicious place and under circumstances which reasonably show that the person (a) is guilty of some felony, (b) is guilty of a violation of Title 9, Chapter 42, Texas Penal Code, (c) is guilty of breach of the peace, (d) is guilty of an offense under Section 49.02, Texas Penal Code, or (e) threatens or is about to commit some offense against the law. Tex.Code Crim. Proc. Ann. art. 14.03(a)(1) (Vernon 2005).

We have concluded the officers had reason to believe that Buchanan was guilty of a felony. Only one question remains: Was Buchanan found in a suspicious place? We hold that he was not.

■ Few places are inherently suspicious. *See Johnson v. State*, 722 S.W.2d 417, 421 (Tex.Crim.App.1986); *State v. Johnson*, 843 S.W.2d 252, 256 (Tex.App.-Texarkana 1992), *aff'd*, 871 S.W.2d 744 (Tex.Crim.App.1994). To hold that a dwelling is a suspicious place solely because it is in poor condition would be tantamount to holding that a car is a suspicious place simply because it needs a tune-

up. Admittedly, there is no bright-line rule for determining whether a place is suspicious. Any determination is necessarily fact-specific. *Holland v. State,* 788 S.W.2d 112, 114 (Tex.App.-Dallas 1990, pet. ref'd). However, other courts have given us several factors to consider.

While there are no specific time limits, the Texas Court of Criminal Appeals has said, "[T]he time between the crime and the apprehension of the suspect in a suspicious place is an important factor." *Dyar v. State,* 125 S.W.3d 460, 468 (Tex.Crim. App.2003). In finding a place as suspicious, "one factor seems to be constant throughout the case law. The time frame between the crime and the apprehension of a suspect in a suspicious place is short." *Id.* Buchanan was arrested four weeks after the robbery took place. A span of nearly a month between an alleged crime and the arrest of a suspect in a particular place is far from short and does not lead to the conclusion that the place is suspicious.

There is no evidence to suggest that the apartment was used primarily for criminal activity as in *Lara v. State,* 469 S.W.2d 177, 179 (Tex.Crim.App.1971). Nor did the officers have reason to believe that the apartment was then currently being put to criminal use. Rather, the officers were specifically seeking Buchanan. *See Rushing v. State,* 500 S.W.2d 667, 669 (Tex. Crim.App.1973).

Buchanan did not run. *See Lara,* 469 S.W.2d at 179. Buchanan did not hide. *See Muniz v. State,* 851 S.W.2d 238, 251 (Tex.Crim.App.1993). The facts of this case do not show any suspicious conduct on the part of Buchanan. *See Hawkins v. State,* 758 S.W.2d 255, 260 (Tex.Crim.App. 1988) (nothing is inherently suspicious about a person standing in a parking lot of a club at 8:30 p.m. or deciding not to be questioned). Buchanan was found asleep on a mattress on the floor. The officers

had to wake him before arresting him. No exigent circumstances necessitated Buchanan's immediate arrest, as was present in *Gallups v. State,* 151 S.W.3d 196, 202 (Tex.Crim.App.2004) (need to ascertain defendant's blood alcohol content for a driving while intoxicated charge).

Perhaps most importantly, the officers in this case clearly had time to secure an arrest warrant before arresting Buchanan. There was no evidence that the officers had any information that Buchanan was about to escape so there was no time to procure a warrant. *See Johnson,* 722 S.W.2d at 421. The police officers drove by and located the garage apartment April 19, but they did not enter and arrest Buchanan until the next day, April 20.

We cannot interpret Article 14.03(a)(1) to be so encompassing that it swallows the general rule that a valid arrest should be based on an arrest warrant. The statute must be limited to situations where the rationale for the warrant requirement does not apply. This is not one of those situations.

■ Because we have held that Buchanan's arrest was in violation of Chapter 14 of the Texas Code of Criminal Procedure, it follows that any evidence obtained as a result of that arrest should have been suppressed in accordance with Article 38.23 of the Texas Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC. ANN. art 38.23 (Vernon 2005). Article 38.23 requires the exclusion of evidence "obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas." TEX.CODE CRIM. PROC. ANN. art. 38.23(a). Evidence should be excluded once a causal connection between the illegality and the evidence is established. *Roquemore v. State,* 60 S.W.3d 862, 870 (Tex.Crim.App.2001) (cit-

ing *State v. Daugherty,* 931 S.W.2d 268, 270 (Tex.Crim.App.1996)).

The search of Buchanan's backpack has a direct causal connection with his arrest. It followed immediately after the arrest and would not have occurred but for the arrest. Therefore, any evidence obtained as a result of that search should have been suppressed. We therefore hold that it was error for the trial court to deny the motion to suppress.

 We must now consider whether this error affected Buchanan's substantial rights. *See* Tex.R.App. P. 44.2(b). In order to properly conduct a harm analysis under Rule 44.2(b), we must consider this error as a type of "Other Errors," and we must disregard the error unless it affected Buchanan's substantial rights. *Id.* For claims of nonconstitutional error, the Texas Court of Criminal Appeals has held that "a conviction should not be overturned unless, after examining the record as a whole, a court concludes that an error may have had 'substantial influence' on the outcome of the proceeding." *Burnett v. State,* 88 S.W.3d 633, 637 (Tex.Crim.App.2002). In other words, if we have " 'a grave doubt' that the result was free from the substantial influence of the error," then we must reverse. *Id.* The Texas Court of Criminal Appeals has explained that "grave doubt" means that "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id.* at 637–38 (citing *O'Neal v. McAninch,* 513 U.S. 432, 433–36, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995)). Thus, "in cases of grave doubt as to harmlessness the petitioner must win." *Burnett,* 88 S.W.3d at 637.

At trial, Buchanan admitted taking merchandise from the Sears store. The defensive theory of the case rested on Buchanan's assertion that he did not possess or exhibit a knife while perpetrating the theft. The State sought to show at trial that Buchanan pulled a knife out of his backpack after being approached by a security officer at the Sears store. This act elevated the theft to the crime of aggravated robbery.

The submission into evidence of the knife recovered from Buchanan's backpack clearly served to strengthen the State's theory. Even though the State presented several witnesses who testified they saw Buchanan with a knife, we cannot conclude that allowing the backpack and the knife itself into evidence did not have a substantial impact on the jury's resolution of the case. Therefore, we must reverse the trial court's judgment of conviction and remand the cause for a new trial.

We reverse the trial court's judgment of conviction and remand the cause for proceedings consistent with this opinion.