

# IN THE
## TENTH COURT OF APPEALS

### No. 10-07-00247-CR

JERRY RANGEL,

Appellant

 v.

THE STATE OF TEXAS,

Appellee

From the 361st District Court
Brazos County, Texas
Trial Court No. 06-03010-CRF-361

## MEMORANDUM OPINION

A jury found Jerry Rangel guilty of aggravated sexual assault and assessed punishment at life in prison. Asserting four issues, Rangel appeals. We will affirm.

Rangel's first issue contends that the trial court abused its discretion by admitting evidence recovered during an unlawful warrantless arrest. Initially, we address the State's contention that Rangel failed to preserve part of this complaint for appellate review. As the State began to offer evidence about the apartment in which Rangel was arrested, Rangel's trial counsel objected based on the police officer's

warrantless entry into the apartment and the warrantless arrest of Rangel. The trial court overruled that objection. Trial counsel then stated the grounds for his objection: "It's based on the Fourth and Fourteenth Amendments to the United States Constitution; Article I, Section 9 and 10 of the Texas Constitution; and Article 38.23 of the Texas Code of Criminal Procedure."

The Court of Criminal Appeals recently wrote:

> In order to preserve an issue for appellate review, a timely and specific objection is required. TEX. R. APP. P. 33.1(a)(1)(A); TEX. R. EVID. 103(a)(1); *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006). A specific objection is necessary to inform the trial judge of the issue and basis of the objection, and to allow the judge a chance to rule on the issue at hand. *Neal v. State*, 150 S.W.3d 169, 178 (Tex. Crim. App. 2004), citing *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977). As we stated in *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992), "all the party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." Beyond this, there are no specific words or technical considerations required for an objection to ensure that the issue will be preserved for appeal. *Id*. If the correct ground of exclusion was apparent to the judge and opposing counsel, no waiver results from a "general or imprecise objection." *Id.* at 908, *citing Zillender*, 557 S.W.2d at 517.

*Layton v. State,* --- S.W.3d ---, ---, 2009 WL 250080, at *2-3 (Tex. Crim. App. Feb. 4, 2009).

Chapter 14 of the Code of Criminal Procedure governs warrantless arrests in Texas. *See* TEX. CODE CRIM. PROC. ANN. arts. 14.03, 14.05 (Vernon 2005 & Supp. 2008). Rangel's trial counsel did not specifically mention Chapter 14 in his warrantless-arrest objection; he mentioned only state and federal constitutional provisions and article 38.23, Texas' statutory exclusionary rule. *Id.* art. 38.23 (Vernon 2005). In a nearly identical case involving a written motion to suppress, the Court of Criminal Appeals

held that the defendant's suppression motion, which cited the same constitutional provisions and article 38.23, failed to alert the trial court or opposing counsel that defense counsel was invoking Chapter 14 and that the defendant thus failed to preserve his Chapter 14 complaint for appeal. *Buchanan v. State,* 207 S.W.3d 772 (Tex. Crim. App. 2006). Applying *Buchanan*, we hold that it was not obvious to the trial court that Rangel was also raising a Chapter 14 argument and that Rangel did not preserve it for appellate review. *See id.* We therefore will only address his constitutional complaint on the warrantless arrest.

We review a trial court's admission or exclusion of evidence for abuse of discretion. *McDonald v. State,* 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). We review a suppression ruling under an abuse-of-discretion standard. *See Montanez v. State,* 195 S.W.3d 101, 108 (Tex. Crim. App. 2006). We afford almost total deference to the trial court's determination of historical facts but review de novo its ruling on mixed questions of law and fact that do not turn on the credibility and demeanor of witnesses. *Neal v. State,* 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). If the trial court does not make explicit findings of historical facts, we review the evidence in the light most favorable to the trial court's ruling. *Walter v. State,* 28 S.W.3d 538, 540 (Tex. Crim. App. 2000). Because in this case the trial court did not make explicit findings, we review the evidence in the light most favorable to the trial court's ruling.

"Neither the United States Constitution, nor Article I, Section 9 contains a requirement that an arrest be authorized by an arrest warrant. An arrest that is otherwise reasonable will not be found to be in violation of either provision because it

was not authorized by an arrest warrant." *Buchanan v. State,* 175 S.W.3d 868, 874 (Tex. App.—Texarkana 2005), *rev'd on other grounds,* 207 S.W.3d 772 (Tex. Crim. App. 2006) (citing *Hulit v. State,* 982 S.W.2d 431, 436 (Tex. Crim. App. 1998)).

Reviewing the evidence in the light most favorable to the trial court's ruling, we hold that Rangel's warrantless arrest was reasonable. Inez, the grandmother of 13-month-old E.A. and the person paying the apartment's rent, found her in the early afternoon on a bed naked, unconscious, and bleeding vaginally. Rangel, who stayed overnight in the apartment a couple of nights a week with E.A.'s mother, was asleep on the bedroom floor with his belt buckle undone after being out all night with E.A.'s mother, whom Inez had taken to work early that morning. Inez relayed that information to her employer, who relayed it to the police just before they entered the apartment and found Rangel still asleep. We overrule Rangel's first issue.

Rangel's second issue complains of the trial court's admission into evidence of the search warrant affidavit and attached inventory, over his hearsay objection. The State again contends that Rangel failed to preserve his complaint. The record reflects the following:

> [DEFENSE COUNSEL]: Judge, I'm going to object to the search warrant being offered in evidence. We are not challenging the search in front of the jury.
>
> [PROSECUTOR]: You just did. You've just got up in front of the jury three or four times and challenged the legality of the search. We are entitled to make sure the jury understands that this was a lawful search.
>
> [DEFENSE COUNSEL]: I'm just making objections. I have the right to do that. It's hearsay.

THE COURT:                  You're not making any objection?

[DEFENSE COUNSEL]:    May I see it?

[PROSECUTOR]:            It's our intention to offer it, Your Honor.

[DEFENSE COUNSEL]:    Judge, my objection is that it is not relevant under Rule 401, and the prejudicial value greatly outweighs the relevance in that we are not challenging – we're not asking for a 38.23 Charge where the jury determines probable cause of the search.  It's just irrelevant.

. . .

THE COURT:                  The objection will be overruled. . . .

In *Layton*, quoted above, the court continued:

> For example, we said that the one-word objection, "hearsay," was sufficient to put the trial judge and opposing counsel on notice of the reason for the objection.  *Lankston*, 827 S.W.2d at 910, *explaining Long v. State*, 800 S.W.2d 545, 548 (Tex. Crim. App. 1990).  In addition, we have previously stated that "we will not be hyper-technical in examination of whether error was preserved."  *Archie v. State*, 221 S.W.3d 695, 698 (Tex. Crim. App. 2007).

*Layton,* --- S.W.3d at ---, 2009 WL 250080, at *3.

Rangel's hearsay objection was adequate under *Layton*.  Accordingly, we will address it.  A search warrant and supporting affidavit are hearsay and generally inadmissible.  *See Foster v. State,* 779 S.W.2d 845, 857 (Tex. Crim. App. 1989); *Pratt v. State,* 748 S.W.2d 483, 484 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd).  We will assume that Rangel did not "open the door" and that the trial court erred in admitting the search warrant affidavit and inventory.  We proceed to a harm analysis.

We may not reverse for nonconstitutional error unless, after examining the record as a whole, we have a "fair assurance that the error did not have a substantial

and injurious effect or influence in determining the jury's verdict." *Garcia v. State,* 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). We disregard any error that does not affect the defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b); TEX. R. EVID. 103(a). Moreover, the erroneous admission of evidence is usually harmless where substantially the same evidence is properly admitted elsewhere. *See Hicks v. State,* 860 S.W.2d 419, 430-31 (Tex. Crim. App. 1993), *overruled on other grounds by Rosales v. State,* 4 S.W.3d 228 (Tex. Crim. App. 1999); *Doggett v. State,* 530 S.W.2d 552, 557 (Tex. Crim. App. 1975).

The affidavit at issue states:

On 3/6/6 Officer Wescoat was dispatched to the St. Joseph Hospital at approximately 1442 hours in reference to a sexual assault of a child under 2 years of age. Detectives Loup and James also responded to St. Joseph Hospital and arrived at approximately 1445 hours. Detective Loup spoke with the mother [D.A.] and the grandmother Inez [ ] about the incident. Apparently, [Inez] was returning home and dropping off Amanda [S.] at 200 Rebecca, apartment #43 and checking on her grandchildren. When she walked up to the apartment she noticed that the front door was open, which she told Detective Loup was out of place. [Inez] walked into the apartment and was looking around for the children. She told Detective Loup that she walked into the back bedroom and she saw the victim lying naked on the bed and bleeding from her vagina. She stated that Jerry Rangel was lying on floor next to the bed, asleep, with his belt buckle undone. [Inez] was able [to] identify Rangel by personal knowledge. [Inez] stated that Rangel has been dating the victim's mother for approximately 5-6 months. [Inez] woke Rangel up and asked him what he had done. Rangel told [Inez] that he had not done anything and he "passed out" asleep.

[Inez] stated that she picked the victim up and drove to St. Joseph Hospital for medical treatment. When she arrived at the scene she told the medical staff there what had happened and one of the nurses in the emergency room called 911. Detective Loup learned from medical personnel that the victim had trauma and bleeding to her vagina, her left leg was broken, she had a fractured skull, and bruising to her face, foot, and hand. The victim was treated and later taken to Scott & White Hospital in Temple Texas by Life-Flight.

Having reviewed the record, we are satisfied that the witnesses who provided the information that is in this affidavit provided the same or substantially the same testimony at trial. Therefore, Rangel was not harmed by the hearsay affidavit. We overrule issue two.

Rangel's third issue complains of the trial court's submission of a voluntary intoxication jury charge pursuant to section 8.04 of the Penal Code. The trial court overruled Rangel's objections that the voluntary intoxication charge was improper because it was a comment on the weight of the evidence, was prejudicial, there was no evidence of intoxication, and that Rangel was not asserting a voluntary intoxication defense.

Article 36.14 requires the trial court to deliver a charge setting forth the law applicable to the case. TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007). We review the trial court's charge for abuse of discretion. *See Woods v. State,* 152 S.W.3d 105, 115 (Tex. Crim. App. 2004).

We have reviewed the law in this area:

The Court of Criminal Appeals more recently discussed section 8.04 in *Taylor v. State,* 885 S.W.2d 154 (Tex. Crim. App. 1994). The defendant claimed that due to psychosis, she did not know right from wrong when she murdered her child; the State countered that her use of marijuana triggered the psychotic reaction. *Id.* at 155. The defendant objected to the court's submission of an instruction under section 8.04. *Id.* The Court explained that subsection "a" refers to the guilt-innocence phase of trial, subsection "b" refers to the punishment phase, and subsection "c" is a non-exclusive provision concerning the jury charge. *Id.* at 156. Thus, subsection "c" does not control whether an instruction is required under subsection "a" at the guilt-innocence phase. *Id.* at 157. The defendant need not have advanced a defense based on intoxication. *Id.* at 158. "[I]f

> there is any evidence from any source that might lead a jury to conclude that the defendant's intoxication somehow excused his actions, an instruction is appropriate. *Id.*

*Haynes v. State*, 85 S.W.3d 855, 858 (Tex. App.—Waco 2002, pet. ref'd) (footnote omitted). We also quoted from Judge Clinton's concurring opinion in *Taylor*, which succinctly stated the holding: "That means, consistent with subsection 'a' of § 8.04, that whenever the evidence raises an issue whether the accused was voluntarily intoxicated at the time he committed the offense, an instruction to the jury that his voluntary intoxication does not excuse his conduct would be appropriate, irrespective of whether the evidence suggests his level of intoxication was such as to have produced a state of temporary insanity." *Taylor*, 885 S.W.2d at 159 (Clinton, J., concurring).

Here, there was evidence from several witnesses that Rangel was intoxicated and still drinking around 7:00 a.m. when he and E.A.'s mother had returned from being out all night and that he was intoxicated when he was arrested around 3:00 p.m. Based on the applicable law and this evidence, which supports the reasonable inference that Rangel was intoxicated when the offense occurred, the trial court did not abuse its discretion. We overrule issue three.

In his fourth and final issue, Rangel complains that, in the punishment phase, the trial court abused its discretion by admitting improperly authenticated evidence of Rangel's juvenile criminal history. The evidence at issue is a 56-page packet from the Texas Youth Commission (TYC) accompanied by a "business records" affidavit (from a TYC records custodian) comporting with Rule of Evidence 902(10). The documents are approximately twenty juvenile court records from Burleson County and Washington

County, only two of which are certified. After Rangel's objection was overruled, the State was allowed to summarize the records for the jury. The prosecutor noted that the records revealed Rangel's juvenile adjudications for vehicle burglary, two criminal mischief offenses, two home burglaries, and penetration of the female sexual organ of a child younger than 14.

The affiant states that the "records are kept by TYC in the regular course of business, and it was the regular course of business of TYC for an employee or representative of TYC with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original." The TYC custodian, however, is not the custodian of the original court documents; she cannot attest to the authenticity of the original court documents, but only that the TYC packet contains correct copies of documents that TYC received from other sources. *See Flowers v. State*, 220 S.W.3d 919, 922 n.14 (Tex. Crim. App. 2007) ("The compiler and custodian of the 'pen packet' is not the custodian of the original judgment or data compilation relating to a defendant's prior conviction. The pen packet custodian cannot attest to the correctness of the original documents, he can attest only that the pen packet contains correct copies of documents that he received from some other source.").

The TYC's self-authenticating business record affidavit does not authenticate the court records, and we disagree with *In re C.P.*, No. 14-98-01094-CV, 2000 Tex. App.

LEXIS 3042, at *5 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (not designated for publication), relied on by the State, to the extent that case is support for the contrary. And we agree with the State's concession in its brief (State's Brief at 32, n.18) that the uncertified court records are not self-authenticating under Rule of Evidence 902(4) and that the trial court erroneously admitted the uncertified court records under that rule.

We thus proceed to a harm analysis on the improperly admitted uncertified records. Rangel says that he was harmed because he received the maximum sentence available when he was a first-time felon eligible for community supervision and that the erroneously admitted juvenile records influenced the jury's sentence.

Error in admitting evidence is nonconstitutional error governed by Texas Rule of Appellate Procedure 44.2(b). TEX. R. APP. P. 44.2(b); TEX. R. EVID. 103(a); *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). Rule 44.2(b) provides that a nonconstitutional error "that does not affect substantial rights must be disregarded." Substantial rights are not affected by the erroneous admission of evidence if, after examining the record as a whole, we have fair assurance that the error did not influence the jury, or had but a slight effect. *Motilla v. State*, 78 S.W.3d 352, 356 (Tex. Crim. App. 2002). In conducting a harm analysis under Rule 44.2(b), we decide "whether the error had a substantial or injurious effect on the jury verdict." *Morales v. State*, 32 S.W.3d 866, 867 (Tex. Crim. App. 2000). We "consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the error and how it might be considered in connection with other evidence in the case[,] . . .the jury instruction given

by the trial judge, the State's theory and any defensive theories, closing arguments, and voir dire if material to appellant's claim." *Id.* We also consider overwhelming evidence of guilt, but that is only one factor in our harm analysis. *Motilla*, 78 S.W.3d at 356-58.

We first consider the offense. The jury heard that Inez found E.A. on the bed, bleeding and unconscious, with Rangel asleep on the floor with his belt unbuckled, zipper down, and the front of his pants wet. Blood on Rangel's pants belonged to E.A., and DNA on a diaper suspiciously discovered the next day in the same bedroom belonged to both E.A. and Rangel. E.A. suffered severe injuries, including multiple bruises and abrasions, multiple skull fractures, a fractured femur, and a vaginal laceration. In his post-arrest statement to Detective Loup, Rangel admitted to drinking beer and ingesting cocaine the night before. At the time of the offense, Rangel was out on bond for the aggravated assault of another girlfriend, who testified that Rangel grabbed her by the neck until she almost passed out, threatened to kill her, and then put a knife to her neck.

Another officer testified that Rangel was a sex offender, had failed to register after moving, and charges for failure to register had been filed. Rangel's father testified that Rangel had gotten in trouble at age 13 and was sent to TYC until he was 18. An acquaintance of Rangel testified that Rangel had admitted to committing a house and a vehicle burglary and to being a registered sex offender as a juvenile.

The State's theory at punishment was that the facts of the offense alone justified a life sentence, although it did mention Rangel's juvenile history in the punishment phase during its opening and closing.

After examining the circumstances of the offense, the evidence relating to the other pending charges against Rangel, and the similar properly admitted testimony about Rangel's juvenile criminal history, we have a fair assurance that the erroneous admission of the uncertified juvenile records did not influence the jury or had but a slight effect and was therefore harmless. *See, e.g., Petruccelli v. State,* 174 S.W.3d 761, 769 (Tex. App.—Waco 2005, pet. ref'd). Rangel's fourth issue is overruled.

We affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
    Justice Reyna, and
    Justice Davis
    (Chief Justice Gray concurs in the judgment. A separate opinion will not issue. He notes, however, that Rangel's objection at trial to the packet of information admitted during punishment was not that the documents were not properly authenticated, which is the only argument made on appeal. As such, I believe the issue on appeal must be overruled because it does not comport with the objection at trial and thus presents nothing for review.)
Affirmed
Opinion delivered and filed March 4, 2009
Do not publish
[CRPM]